JK

**FILED**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

AUG 15 2018

JUDGE CHARLES R. NORGLE
U.S. District Court Judge

UNITED STATES OF AMERICA

v.

JALEEL ATAA

No. 18 CR 104

Judge Charles R. Norgle

## PLEA AGREEMENT

1.      This Plea Agreement between the United States Attorney for the Northern District of Illinois, JOHN R. LAUSCH, JR., and defendant JALEEL ATAA, and his attorney, WILLIAM WALTERS, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2.      The indictment in this case charges defendant with making false and fictitious statements intended to deceive a licensed dealer of firearms with the intent to deceive the dealer with respect to a fact material to the lawfulness of the sale of a firearm, in violation of Title 18, United States Code, Section 922(a)(6) (Counts 1-4).

3.      Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

4.      Defendant fully understands the nature and elements of the crimes with which he has been charged.

### Charge to Which Defendant Is Pleading Guilty

5.     By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following count of the indictment: Count One, which charges defendant with making a false and fictitious statement intended to deceive a licensed dealer of firearms with respect to a fact material to the lawfulness of the sale of a firearm, in violation of Title 18, United States Code, Section 922(a)(6).

### Factual Basis

6.     Defendant will plead guilty because he is in fact guilty of the charge contained in Count One of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to Guideline §1B1.3:

On or about April 5, 2016, at Winthrop Harbor, in the Northern District of Illinois, Eastern Division, defendant herein, in connection with the acquisition of a firearm, namely, a Hi-Point model C9 9mm caliber pistol with serial number P1919912 ("Subject Gun 7"), from The Outdoorsman Sport Shop, a licensed dealer of firearms, within the meaning of Title 18, United States Code, Chapter 44, did knowingly make a false and fictitious written statement to The Outdoorsman Sport Shop, which statement was intended and likely to deceive The Outdoorsman Sport Shop with respect to a fact material to the lawfulness of the sale of the firearm to the defendant, under Title 18, United States Code, Chapter 44, in that defendant represented on Form 4473 that he was the actual buyer of the firearm, when, in fact,

2

as defendant then knew, he was not the actual buyer of the firearm; in violation of Title 18, United States Code, Section 922(a)(6).

More specifically, between February 29, 2016 and March 2, 2017, defendant purchased 13 firearms from the following firearm dealers: 5 Star Firearms in Zion, Illinois; Outdoorsman Sports Shop in Winthrop Harbor, Illinois, and Schrank's Smoke 'N' Gun in Waukegan, Illinois. Defendant purchased the following firearms:

| Subject Gun | Date of Purchase | Gun Type | SN | Licensed Firearm Dealer |
|---|---|---|---|---|
| 1 | 2/29/16 | KAHR Arms TP9 9mm | EP0682 | 5 Star Firearms |
| 2 | 3/16/16 | Taurus PT11162 9mm | TGZ58706 | Outdoorsman |
| 3 | 3/23/16 | Taurus PT130, 40 caliber | SGY45956 | Outdoorsman |
| 4 | 3/23/16 | Taurus PT24/7, 45 caliber | NGW36820 | Outdoorsman |
| 5 | 3/28/16 | Glock 17, 9mm | DDF341US | Schrank's |
| 6 | 4/2/16 | FNH USA FNS-40, 40 caliber | GKU0072893 | Outdoorsman |
| 7 | 4/5/16 | Hi-Point C9 9mm | P1919912 | Outdoorsman |
| 8 | 4/5/16 | Taurus PT24/7 9mm | TGW84517 | Outdoorsman |
| 9 | 2/9/17 | Taurus PT111 G2 9mm | TJZ85302 | Schrank's |
| 10 | 2/13/17 | Taurus PT111 G2 9mm | TJZ85466 | Schrank's |
| 11 | 2/27/17 | Kel-Tec PF9, 9mm | R5N32 | Schrank's |
| 12 | 3/2/17 | SCCY CPX-2, 9mm | 366944 | Schrank's |

| 13 | 3/2/17 | Standard SA9 | 8202 | Schrank's |

At the time of defendant's purchase of each of these firearms, the licensed firearm dealer provided defendant with a Firearms Transaction Record, or Form 4473. Defendant filled out the form at the time of each purchase, answering "yes" to the question, "Are you the actual transferee/buyer of the firearm(s) listed on this form?" Defendant then signed and submitted the form to complete his purchase of each of the subject firearms. Defendant acknowledges that the form contains the warning, "You are not the actual buyer if you are acquiring the firearm(s) on behalf of another person. If you are not the actual buyer, the dealer cannot transfer the firearm to you." Defendant acknowledges that his answer to this question was material to the lawfulness of the sale of the firearms.

Defendant admits that he purchased Subject Guns 3-13 on behalf of others, including Individual A, Individual B and Individual C. Defendant admits that he was paid by Individuals A-C to purchase the Subject Guns and that he falsely represented that he was the actual buyer of the Subject Guns on the Forms 4473 he completed in order to purchase the Subject Guns. Defendant admits that he believed Individual A-C were not able to lawfully possess firearms.

As set forth in Count One of the Indictment, on or about April 5, 2016, defendant purchased Subject Gun 7 from The Outdoorsman Sports Shop. On the Form 4473 related to this purchase, defendant falsely represented that he was the actual buyer of Subject Gun 7. Defendant was paid approximately $100 by Individual

4

A to purchase Subject Gun 7 for Individual A. Defendant provided Individual A with Subject Gun 7 immediately after the purchase. Defendant acknowledges that on or about May 15, 2016, Gurnee Police recovered Subject Gun 7 in the possession of another individual who was not able to legally possess a firearm. In addition, defendant admits to purchasing the following Subject Guns by making the false statements set forth below.

On or about March 23, 2016, defendant purchased a .40 caliber Taurus PT130 firearm, bearing serial number SGY45956 ("Subject Gun 3") from The Outdoorsman Sports Shop. On the Form 4473 related to this purchase, defendant falsely represented that he was the actual buyer of Subject Gun 3. Defendant was paid approximately $100 by Individual A to purchase Subject Gun 3 for Individual A. Defendant provided Individual A with Subject Gun 3 immediately after the purchase. Defendant acknowledges that on or about January 23, 2017, Chicago Police officers recovered Subject Gun 3 in the possession of another individual who was not able to legally possess a firearm.

On or about March 23, 2016, defendant purchased a .45 caliber Taurus PT24/7 firearm, bearing serial number NGW36820 ("Subject Gun 4") from The Outdoorsman Sports Shop. On the Form 4473 related to this purchase, defendant falsely represented that he was the actual buyer of Subject Gun 4. Defendant was paid by Individual B to purchase Subject Gun 4 for Individual B. Defendant provided

5

Individual B with Subject Gun 4 shortly after he purchased Subject Gun 4. Defendant believes that Individual B sold Subject Gun 4 to another individual.

On or about March 28, 2016, defendant purchased a 9 millimeter Glock 17 firearm, bearing serial number DDF341US ("Subject Gun 5") from Schrank's Smoke 'N' Gun. On the Form 4473 related to this purchase, defendant falsely represented that he was the actual buyer of Subject Gun 5. Defendant provided Subject Gun 5 to Individual D. Defendant acknowledges that on or about April 12, 2016, Waukegan Police officers recovered Subject Gun 5 in the possession of Individual D, who was not able to legally possess a firearm.

On or about April 2, 2016, defendant purchased a .40 caliber FNH USA FNS-40 firearm, bearing serial number GKU0072893 ("Subject Gun 6") from The Outdoorsman Sports Shop. On the Form 4473 related to this purchase, defendant falsely represented that he was the actual buyer of Subject Gun 6. Defendant provided Subject Gun 6 to Individual D. Defendant acknowledges that on or about July 30, 2016, Northfield Police officers recovered Subject Gun 6 in the possession of Individual D, who was not able to legally possess a firearm.

On or about April 5, 2016, defendant purchased a 9 millimeter Taurus PT 24/7 firearm, bearing serial number TGW84517 ("Subject Gun 8") from The Outdoorsman Sports Shop. On the Form 4473 related to this purchase, defendant falsely represented that he was the actual buyer of Subject Gun 8. Defendant was paid

approximately $100 by Individual A to purchase Subject Gun 8 for Individual A. Defendant provided Individual A with Subject Gun 8 immediately after the purchase.

On or about February 9, 2017, defendant purchased a 9 millimeter Taurus PT111 G2 firearm, bearing serial number TJZ85302 ("Subject Gun 9") from Schrank's Smoke 'N' Gun. On the Form 4473 related to this purchase, defendant falsely represented that he was the actual buyer of Subject Gun 9. Individual B provided defendant with money to purchase Subject Gun 9, went to the firearms dealer with defendant and helped defendant select Subject Gun 9. After the purchase, defendant provided Individual B with Subject Gun 9 by leaving Subject Gun 9 in Individual B's car.

On or about February 13, 2017, defendant purchased a 9 millimeter Taurus PT111 G2 firearm, bearing serial number TJZ85466 ("Subject Gun 10") from Schrank's Smoke 'N' Gun. On the Form 4473 related to this purchase, defendant falsely represented that he was the actual buyer of Subject Gun 10. Shortly after purchasing Subject Gun 10, defendant sold Subject Gun 10 to Individual A for approximately $400 to $500.

On or about February 27, 2017, defendant purchased a 9 millimeter Kel-Tec PF9 firearm, bearing serial number R5N32 ("Subject Gun 11") from Schrank's Smoke 'N' Gun. On the Form 4473 related to this purchase, defendant falsely represented that he was the actual buyer of Subject Gun 11. Individual C gave defendant approximately $300 to purchase Subject Gun 11. After defendant purchased Subject

7

Gun 11, he gave Subject Gun 11 to Individual C. Defendant acknowledges that on or about March 5, 2017, North Chicago Police recovered Subject Gun 11 in the possession of another individual who was not able to legally possess a firearm.

On or about March 2, 2017, defendant purchased a 9 millimeter SCCY CPX-2 firearm, bearing serial number 366944 ("Subject Gun 12") and a Standard SA9 firearm, bearing serial number 8202 ("Subject Gun 13") from Schrank's Smoke 'N' Gun. On the Form 4473 related to these purchase, defendant falsely represented that he was the actual buyer of Subject Guns 12 and 13. On or about March 2, 2017, Individual B gave defendant approximately $570 to purchase Subject Guns 12 and 13. After purchasing the firearms, defendant gave Subject Guns 12 and 13 to Individual B.

## Maximum Statutory Penalties

7. Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

a. A maximum sentence of 10 years' imprisonment. This offense also carries a maximum fine of $250,000. Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

b. Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty imposed.

8

## Sentencing Guidelines Calculations

8.     Defendant understands that in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

9.     For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a.     **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2016 Guidelines Manual.

9

b. **Offense Level Calculations**.

i. The base offense level is 12, pursuant to Guideline § 2K2.1(a)(7).

ii. Pursuant to Guideline § 2K2.1(b)(1), a 4-level enhancement is appropriate because the offense involved more than eight firearms.

iii. Pursuant to Guideline § 2K2.1(b)(5), a 4-level enhancement is appropriate because the defendant engaged in the trafficking of firearms.

iv. It is the government's position that pursuant to Guideline § 2K2.1(b)(6), a 4-level enhancement is appropriate because the defendant transferred firearms with knowledge and reason to believe that it would be used or possessed in connection with another felony offense. The defense reserves the right to dispute this enhancement.

v. Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

vi. In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

c. **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

d. **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the government's position is that the anticipated offense level is 21, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 37 to 46 months' imprisonment, in addition to any supervised release and fine the Court may impose. The defendant's position is that the anticipated offense level is 17, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 24 to 30 months' imprisonment, in addition to any supervised release and fine the Court may impose.

e. Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

10. Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

## Agreements Relating to Sentencing

11. Each party is free to recommend whatever sentence it deems appropriate.

12. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

13. Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

14. After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the indictment as to defendant.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

15. This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 18 CR 104.

16. This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or

release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

17.     Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.     **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i.     The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.     If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

14

iii.     If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

iv.     If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v.     At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi.     At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii.     At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be

drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

b. **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

18. Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

## Presentence Investigation Report/Post-Sentence Supervision

19. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

20. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's

Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

21. For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

### Other Terms

22. Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing

17

financial statements and supporting records as requested by the United States Attorney's Office.

23. Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## Conclusion

24. Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

25. Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of

18

limitations between the signing of this Agreement and the commencement of such prosecutions.

26.     Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

27.     Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

28.     Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: Aug 15, 2018

JOHN R. LAUSCH, JR.
United States Attorney

JALEEL ATAA
Defendant

CORNELIUS VANDENBERG
Assistant U.S. Attorney

WILLIAM WALTERS
Attorney for Defendant

19