UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 18 CR 104 |
| v. | Judge Charles R. Norgle |
| JALEEL ATAA | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The UNITED STATES OF AMERICA, by its attorney, JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, respectfully submits this sentencing memorandum with respect to defendant Jaleel Ataa. For the reasons set forth below, a sentence within the Guidelines range of 41 to 51 months' imprisonment is warranted and sufficient, but not greater than necessary, upon consideration of the relevant sentencing factors set forth in 18 U.S.C. § 3553(a).

## I. Offense Conduct

In summary, on or about April 5, 2016, at Winthrop Harbor, in the Northern District of Illinois, Eastern Division, defendant, in connection with the acquisition of a firearm, namely, a Hi-Point model C9 9mm caliber pistol with serial number P1919912 ("Subject Gun 7"), from The Outdoorsman Sport Shop, a licensed dealer of firearms, within the meaning of Title 18, United States Code, Chapter 44, did knowingly make a false and fictitious written statement to The Outdoorsman Sport Shop, which statement was intended and likely to deceive The Outdoorsman Sport Shop with respect to a fact material to the lawfulness of the sale of the firearm to the defendant, under Title 18, United States Code, Chapter 44, in that defendant

represented on Form 4473 that he was the actual buyer of the firearm, when, in fact, as defendant then knew, he was not the actual buyer of the firearm; in violation of Title 18, United States Code, Section 922(a)(6).   D. 42, pg. 2-3.

More specifically, between February 29, 2016 and March 2, 2017, defendant purchased 13 firearms from the following firearm dealers: 5 Star Firearms in Zion, Illinois; Outdoorsman Sports Shop in Winthrop Harbor, Illinois, and Schrank's Smoke 'N' Gun in Waukegan, Illinois.   Defendant purchased the following firearms:

| Subject Gun | Date of Purchase | Gun Type | SN | Licensed Firearm Dealer |
|---|---|---|---|---|
| 1 | 2/29/16 | KAHR Arms TP9 9mm | EP0682 | 5 Star Firearms |
| 2 | 3/16/16 | Taurus PT11162 9mm | TGZ58706 | Outdoorsman |
| 3 | 3/23/16 | Taurus PT130, 40 caliber | SGY45956 | Outdoorsman |
| 4 | 3/23/16 | Taurus PT24/7, 45 caliber | NGW36820 | Outdoorsman |
| 5 | 3/28/16 | Glock 17, 9mm | DDF341US | Schrank's |
| 6 | 4/2/16 | FNH USA FNS-40, 40 caliber | GKU0072893 | Outdoorsman |
| 7 | 4/5/16 | Hi-Point C9 9mm | P1919912 | Outdoorsman |
| 8 | 4/5/16 | Taurus PT24/7 9mm | TGW84517 | Outdoorsman |
| 9 | 2/9/17 | Taurus PT111 G2 9mm | TJZ85302 | Schrank's |
| 10 | 2/13/17 | Taurus PT111 G2 9mm | TJZ85466 | Schrank's |
| 11 | 2/27/17 | Kel-Tec PF9, 9mm | R5N32 | Schrank's |
| 12 | 3/2/17 | SCCY CPX-2, 9mm | 366944 | Schrank's |
| 13 | 3/2/17 | Standard SA9 | 8202 | Schrank's |

D. 42, pg. 3.

At the time of defendant's purchase of each of these firearms, the licensed firearm dealer provided defendant with a Firearms Transaction Record, or Form 4473. The form contains the question, "Are you the actual transferee/buyer of the firearm(s) listed on this form?" The form also contains the warning, "You are not the actual buyer if you are acquiring the firearm(s) on behalf of another person. If you are not the actual buyer, the dealer cannot transfer the firearm to you." Defendant filled out this form at the time of each purchase, answering "yes," to materially represent that he was the actual transferee/buyer of the corresponding firearms. Defendant then signed and submitted the form to complete his purchase of each of the subject firearms. D. 42, pg. 4.

Defendant admits that he purchased Subject Guns 3-13 on behalf of others, including Individual A, Individual B and Individual C. Defendant admits that he was paid by these individuals to purchase the Subject Guns and that he falsely represented that he was the actual buyer of the Subject Guns on the Forms 4473 he completed in order to purchase the Subject Guns. Defendant admits that he believed Individual A, Individual B and Individual C were not able to lawfully possess firearms. D. 42, pg. 4.

**Subject Gun 7**

As set forth in Count One of the Indictment, on or about April 5, 2016, defendant purchased Subject Gun 7 from The Outdoorsman Sports Shop. On the Form 4473 related to this purchase, defendant falsely represented that he was the actual buyer of Subject Gun 7. Defendant was paid approximately $100 by

3

Individual A to purchase Subject Gun 7 for Individual A. Defendant provided Individual A with Subject Gun 7 immediately after the purchase. D. 42, pg. 4-5.

On or about May 15, 2016, Gurnee Police recovered Subject Gun 7 in the possession of another individual who was not able to legally possess a firearm. D. 42, pg. 5.

On April 14, 2016, a North Chicago police officer responded to a call regarding shots fired on the 1700 block of Seymour Avenue in North Chicago. A witness stated that a bullet had gone into his living room. Officers observed two-three bullet holes on the exterior of the male witness' property. Ballistic tests on Subject Gun 7 show that it matched the casings of this shooting. PSR ¶17.

On May 15, 2016, Gurnee police recovered Subject Gun 7 from Individual D, a juvenile. The gun was found in a car Individual D was driving and Individual D's fingerprints were found on the gun. PSR ¶17.

### Subject Gun 3

On or about March 23, 2016, defendant purchased a .40 caliber Taurus PT130 firearm, bearing serial number SGY45956 ("Subject Gun 3") from The Outdoorsman Sports Shop. On the Form 4473 related to this purchase, defendant falsely represented that he was the actual buyer of Subject Gun 3. Defendant was paid approximately $100 by Individual A to purchase Subject Gun 3 for Individual A. Defendant provided Individual A with Subject Gun 3 immediately after the purchase. D. 42, pg. 5.

On January 23, 2017, Chicago Police received calls regarding a shooting, in which witnesses reported that shots came from a gray jeep on the 3900 block of West Flournoy, in Chicago, Illinois. Chicago Police officers observed a gray 2012 Jeep Liberty speed through a nearby intersection, performed a traffic stop and as Individual E exited the vehicle, observed a pistol on the front passenger seat. The pistol was retrieved and found to be Subject Gun 3. Individual E had no valid FOID card and identified as a Traveling Vice Lords street gang member. PSR ¶16.

### Subject Gun 4

On or about March 23, 2016, defendant purchased a .45 caliber Taurus PT24/7 firearm, bearing serial number NGW36820 ("Subject Gun 4") from The Outdoorsman Sports Shop. On the Form 4473 related to this purchase, defendant falsely represented that he was the actual buyer of Subject Gun 4. Defendant was paid by Individual B to purchase Subject Gun 4 for Individual B. Defendant provided Individual B with Subject Gun 4 shortly after he purchased Subject Gun 4. Defendant believed that Individual B sold Subject Gun 4 to another individual. Defendant believed that Individual B was not able to lawfully possess firearms. D. 42, pg. 5-6.

Subject Gun 4 has not yet been recovered by law enforcement. PSR ¶18.

### Subject Gun 5

On or about March 28, 2016, defendant purchased a 9 millimeter Glock 17 firearm, bearing serial number DDF341US ("Subject Gun 5") from Schrank's Smoke 'N' Gun. On the Form 4473 related to this purchase, defendant falsely represented

5

that he was the actual buyer of Subject Gun 5. Defendant provided Subject Gun 5 to Individual F. D. 42, pg. 6.

On or about April 12, 2016, Waukegan Police officers recovered Subject Gun 5 in the possession of Individual F, who was not able to legally possess a firearm. D. 42, pg. 6.

### Subject Gun 6

On or about April 2, 2016, defendant purchased a .40 caliber FNH USA FNS-40 firearm, bearing serial number GKU0072893 ("Subject Gun 6") from The Outdoorsman Sports Shop. On the Form 4473 related to this purchase, defendant falsely represented that he was the actual buyer of Subject Gun 6. Defendant provided Subject Gun 6 to Individual F. D. 42, pg. 6.

On or about July 30, 2016, Northfield Police officers recovered Subject Gun 6 in the possession of Individual F, who was not able to legally possess a firearm. D. 42, pg. 6.

### Subject Gun 8

On or about April 5, 2016, defendant purchased a 9 millimeter Taurus PT 24/7 firearm, bearing serial number TGW84517 ("Subject Gun 8") from The Outdoorsman Sports Shop. On the Form 4473 related to this purchase, defendant falsely represented that he was the actual buyer of Subject Gun 8. Defendant was paid approximately $100 by Individual A to purchase Subject Gun 8 for Individual A. Defendant provided Individual A with Subject Gun 8 immediately after the purchase. D. 42, pg. 6-7.

Subject Gun 8 has not yet been recovered by law enforcement.   PSR ¶18.

**Subject Gun 9**

On or about February 9, 2017, defendant purchased a 9 millimeter Taurus PT111 G2 firearm, bearing serial number TJZ85302 ("Subject Gun 9") from Schrank's Smoke 'N' Gun.   On the Form 4473 related to this purchase, defendant falsely represented that he was the actual buyer of Subject Gun 9.   Individual B provided defendant with money to purchase Subject Gun 9, went to the firearms dealer with defendant and helped defendant select Subject Gun 9.   After the purchase, defendant provided Individual B with Subject Gun 9 by leaving Subject Gun 9 in Individual B's car.   D. 42, pg. 7.

Subject Gun 9 has not yet been recovered by law enforcement.   PSR ¶18.

**Subject Gun 10**

On or about February 13, 2017, defendant purchased a 9 millimeter Taurus PT111 G2 firearm, bearing serial number TJZ85466 ("Subject Gun 10") from Schrank's Smoke 'N' Gun.   On the Form 4473 related to this purchase, defendant falsely represented that he was the actual buyer of Subject Gun 10.   Shortly after purchasing Subject Gun 10, defendant sold Subject Gun 10 to Individual A for approximately $400 to $500. D. 42, pg. 7.

Subject Gun 10 has not yet been recovered by law enforcement.   PSR ¶18.

**Subject Gun 11**

On or about February 27, 2017, defendant purchased a 9 millimeter Kel-Tec PF9 firearm, bearing serial number R5N32 ("Subject Gun 11") from Schrank's

7

Smoke 'N' Gun. On the Form 4473 related to this purchase, defendant falsely represented that he was the actual buyer of Subject Gun 11. Individual C gave defendant approximately $300 to purchase Subject Gun 11. After defendant purchased Subject Gun 11, he gave Subject Gun 11 to Individual C. D. 42, pg. 7-8.

On or about March 5, 2017, North Chicago Police recovered Subject Gun 11 in the possession of another individual who was not able to legally possess a firearm. D. 42, pg. 8.

**Subject Guns 12 and 13**

On or about March 2, 2017, defendant purchased a 9 millimeter SCCY CPX-2 firearm, bearing serial number 366944 ("Subject Gun 12") and a Standard SA9 firearm, bearing serial number 8202 ("Subject Gun 13") from Schrank's Smoke 'N' Gun. On the Form 4473 related to these purchase, defendant falsely represented that he was the actual buyer of Subject Guns 12 and 13. On or about March 2, 2017, Individual B gave defendant approximately $570 to purchase Subject Guns 12 and 13. After purchasing the firearms, defendant gave Subject Guns 12 and 13 to Individual B. D. 42, pg. 8.

Subject Guns 12 and 13 have not yet been recovered by law enforcement. PSR ¶18.

## II. Indictments and Plea

On February 13, 2018, the grand jury returned an indictment charging the defendant, Jaleel Ataa, with knowingly making a false and fictitious material written statement to a licensed dealer of firearms, in connection with the

acquisition of a firearm (Counts 1-4), in violation of Title 18, United States Code, Section 922(a)(6).   Dkt. No. 1.

On August 15, 2018, the defendant plead guilty to Count 1 of the indictment, which charges that on April 5, 2016, defendant in connection with the acquisition of a firearm, namely, a Hi-Point model C9 9mm caliber pistol with serial number P1919912, from a licensed dealer of firearms, did knowingly make a false and fictitious written statement, which statement was intended and likely to deceive the licensed dealer of firearms with respect to a fact material to the lawfulness of the sale of the firearm to the defendant, under Title 18, United States Code, Chapter 44, in that defendant represented on Form 4473 that he was the actual buyer of the firearm, when, in fact, as defendant then knew, he was not the actual buyer of the firearm, pursuant to a Plea Agreement. Dkt. Nos. 42-43.

Defendant is scheduled to be sentenced by this Court on December 12, 2018, at 11:30 a.m. Dkt. No. 44.

## III.    Calculation and Guidelines Range

A. PSR Calculation of Offense Level

Pursuant to the November 2018 Sentencing Guidelines Manual, the PSR calculates the total offense level as follows (PSR ¶¶23-21):

| 12 | Base Offense Level. USSG § 2K2.1 |
|----|----------------------------------|
| +4 | Offense involved more than 8 firearms.   USSG § 2K2.1(b)(1)(B) |
| +4 | Defendant engaged in firearms trafficking.   USSG § 2K2.1(b)(5) |
| +4 | Defendant transferred firearms with knowledge and reason to believe that it would be used or possessed in connection with another felony offense.   USSG |

9

| | § 2K2.1(b)(6)(B). |
|---|---|
| -3 | Acceptance of responsibility.   USSG § E1.1(a) and (b) |
| **29** | **Total Offense Level** |

The government agrees with the PSR's calculation of the offense level.

B. <u>Possession of Weapon In Connection With Another Felony Offense</u>

Probation and the government agree that the defendant receives a four level enhancement in the offense level because the defendant transferred firearms with knowledge and reason to believe that it would be used or possessed in connection with another felony offense, pursuant to Guideline § 2K2.1(b)(6)(B).   PSR ¶¶ 27-28. Defendant disputes this enhancement.   PSR ¶ 27.

Application note 2K2.1 14(C) clarifies that "another felony offense" means "any federal, state, or local offense, other than the explosive or firearms possession or trafficking offense, punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained.   In *U.S. v. Jones*, 528 Fed. Appx. 627, 631 (7th Cir. 2013), the Seventh Circuit found that an enhancement under § 2K2.1(b)(6) was valid when defendant, convicted of being a felon in possession of a firearm, "transferred the gun with reason to believe that the [recipient], by accepting it, would himself commit the crime of possession of a firearm by a felon."   *See also U.S. v. Jackson*, 741 F. 3d 861 (7th Cir. 2014) (finding § 2K2.1(b)(6) enhancement applicable when defendant transferred firearm to someone who he had reason to believe would be illegally possessing the firearm).

10

Defendant admits that he purchased Subject Guns 3-13 on behalf of others, including Individuals A-C. D. 42, pg. 4. Defendant further admitted that "he believed those individuals "were not able to lawfully possess firearms." *Id.* This was a reasonable belief given the fact that each of these individuals paid the defendant a premium to obtain the guns for them since they could not legally purchase the gun themselves.

Defendant also admitted to providing Individual F, his cousin, with two firearms. D. 42, pg. 6.

As set forth in more detail in the government's version, Individuals B and F were convicted felons at the time defendant provided them with firearms.

C.    Criminal History

Probation and the government agree that the defendant's criminal history score is 3 and his criminal history category is II. PSR at ¶46. The defendant receives one criminal history point because the defendant was sentenced, on or about December 12, 2013, to one year supervision, as a result of his conviction for theft, in the Circuit Court of Lake County, in Chicago, Illinois. PSR at ¶43. The defendant receives two criminal history points because the defendant was sentenced, on or about March 22, 2018, to 224 days of incarceration, as a result of his conviction for unlawful

11

delivery of a controlled substance, in the Circuit Court of Lake County, in Chicago, Illinois.   PSR at ¶45.

> D.     Advisory Guidelines Range

Probation and the government also agree that the defendant's advisory guidelines range would be 41-51 months. PSR at ¶83.

The statutory maximum term of imprisonment is 10 years, or 120 months. 21 U.S.C. §§ 922(a)(6) and 924(a)(2). PSR at ¶82.

**The §3553(a) Factors Support a Guidelines Sentence of 41-51 Months' Imprisonment**

Section 3553(a) requires the Court to impose a sentence that is "sufficient, but not greater than necessary," to comply with the purposes of sentencing.[1]   In order to determine the sentence to impose, the court must consider the statutory factors listed in § 3553(a)(1)-(7).   One of those factors is the advisory range set by the Sentencing Guidelines, and another is the Commission's policy statements.   § 3553(a)(4), (a)(5). Although the Sentencing Guidelines are advisory only, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark."   *Gall v. United States*, 552 U.S. 38, 49 (2007).   For the reasons set forth below, the statutory sentencing factors reflect that

---

[1]Those purposes are the need for the sentence "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." § 3553(a)(2)(A)-(D).

a sentence within the Guideline range is warranted.

### A. Seriousness, Nature and Circumstances of Offense

The seriousness and nature and circumstances of defendant's crimes demonstrate that a Guideline-range sentence is warranted.

Over a 13-month period, defendant purchased 13 firearms. Defendant admits that he was paid to purchase 11 of these firearms on behalf of felons and other individuals who were not legally able to purchase or possess firearms.

Five of the firearms straw-purchased by the defendant have been recovered by law enforcement throughout the Chicagoland area. Gurnee Police found Subject Gun 7 in the possession of a juvenile after it was used in a drive-by shooting. Chicago Police, while responding to calls regarding a different drive-by shooting, found Subject Gun 3 in the possession of a gang member. Waukegan Police found Subject Gun 5 in possession of a felon. Northfield Police found Subject Gun 6 in possession of a felon. North Chicago Police found Subject Gun 11 in the possession of a gang member who fled from the police.

Law enforcement officers have not yet found the remaining six firearms purchased by the defendant and sold at a premium to individuals who were not able to legally obtain firearms themselves.

### B. History and Characteristics of Defendant

A Guideline range sentence is consistent with the history and characteristics of the defendant and will provide just punishment. Defendant has two prior convictions, a 2018 conviction for distributing cocaine and a 2013 conviction for theft.

13

Defendant also admits to using marijuana for approximately the past nine years. PSR at ¶67.

C.     The Need to Protect the Public and Afford Adequate Deterrence and Respect for the Law

A guideline sentence of incarceration would protect the community from the defendant's trafficking of firearms.

The sentence imposed should have specific and general deterrent effects. *See* 18 U.S.C. § 3553(a)(2)(B); *United States v. Mendoza,* 576 F.3d 711, 722 (7th Cir. 2009) (noting that general deterrence is a factor to consider).

There is also a strong need for general deterrence in this type of case. Over the past few years, the Chicagoland area has been subjected to devastating firearm violence. Federal law meant to curb this violence by preventing felons, and other prohibited persons, from possessing firearms, is meaningless if non-prohibited persons choose to make straw purchases of firearms. A significant period of incarceration is necessary to outweigh the monetary benefits of acting as a straw purchaser.

## V.     SUPERVISED RELEASE

The government recommends that the Court impose a period of supervised release of between one and three years. *See* PSR ¶86. During that period, the government recommends that the Court consider imposing the following conditions of supervised release, as set forth in the PSR (¶¶ 85-86):

### A.     Mandatory Conditions, Pursuant to 18 U.S.C. § 3583(d)

- The defendant shall not commit another federal, state, or local crime.

14

- The defendant shall not unlawfully possess a controlled substance.

- The defendant shall refrain from any unlawful use of a controlled substance AND submit to one drug test within 15 days of release on probation and at least two periodic tests thereafter, up to 104 periodic tests, during each year of supervised release for use of a controlled substance.

- The defendant shall cooperate in the collection of a DNA sample from the defendant at the direction of the United States Probation Office.

**B.    Discretionary Conditions, Pursuant to 18 U.S.C. §§ 3583(d) and 3563(b)**

The following conditions should be imposed on the basis that they facilitate supervision by the probation officer, which is important here to promote defendant's respect for the law, and deter the defendant from future crimes—

- Defendant shall seek, and work conscientiously at, lawful employment or pursue conscientiously a course of study or vocational training that will equip defendant for employment.

- Defendant shall refrain from knowingly meeting or communicating with any person who defendant knows to be engaged, or planning to be engaged, in criminal activity.

- Defendant shall refrain from excessive use of alcohol (defined as having a blood alcohol concentration greater than 0.08%; and the use of a narcotic drug or other controlled substance, as defined in § 102 of the Controlled Substances Act (21 USC § 802), without a prescription by a licensed medical practitioner.

- Defendant shall refrain from possessing a firearm, destructive device or other dangerous weapon.

- Defendant shall remain within the jurisdiction where he is being supervised, unless granted permission to leave by the court or a probation officer.

- Defendant shall report to the probation office as directed by the court or a probation officer.

- Defendant shall permit a probation officer to visit the defendant at any reasonable time at home; or at another reasonable location specified by a probation officer; and permit confiscation of any contraband observed in plain view of the probation officer.

- Defendant shall notify a probation officer promptly, within 72 hours, of any change in residence, employer, or workplace and, absent constitutional or other legal privilege, answer inquiries by a probation officer.

- Defendant shall notify a probation officer promptly, within 72 hours, if arrested or questioned by a law enforcement officer.

- Defendant shall submit his person, property, house, residence, vehicle papers, or office, to a search conducted by a United States Probation Officer(s). Failure to submit to a search may be grounds for revocation of release. Defendant shall warn other occupants that the premises may be subject to searches pursuant to this condition.

C. **Special Conditions, Pursuant to 18 U.S.C. §§ 3563(b)(22) and 3583(d)**

The following conditions should be imposed on the basis that they afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, provide the defendant with needed educational or vocational training, medical care, or other correction treatment in the most effective manner, and/or facilitate supervision by the probation officer:

- Defendant shall participate in an approved job skill-training program at the direction of a probation officer within the first 60 days of placement on supervision.

- Defendant shall, if unemployed after the first 60 days of supervision, or if unemployed for 60 days after termination or lay-off from employment, perform at least 20 hours of community service per week at the direction of the U.S. Probation Office until gainfully employed. The amount of community service shall not exceed 200 hours.

- Defendant shall not enter into any agreement to act as an informer or special agent of a law enforcement agency without the permission of the court.

16

These supervised release terms are narrowly tailored to facilitate supervision by the probation officer, deter the defendant from future crimes, support defendant's rehabilitation and reintegration into the community, ensure that he is engaged in lawful pursuits rather than criminal activity.

## VI.   CONCLUSION

In view of the Section 3553(a) factors, a sentence within the advisory Guideline range is fair, reasonable, and sufficient, but not greater than necessary.   For these reasons, the government respectfully requests that this Court impose a Guideline sentence of 41 to 51 months' imprisonment.

Dated: November 28, 2018

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By:   */s/ Cornelius Vandenberg*
CORNELIUS A. VANDENBERG
Assistant U.S. Attorney
219 South Dearborn Street, 5th Floor
Chicago, Illinois 60604